UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT FERENSIC,

                Petitioner,

v.                                 CASE NO. 03-CV-71435-DT
                                 HONORABLE ARTHUR J. TARNOW

THOMAS BIRKETT,

                Respondent.
_____/

## OPINION AND ORDER GRANTING APPLICATION
## FOR THE WRIT OF HABEAS CORPUS

Petitioner Robert Ferensic has filed an application for the writ of habeas corpus under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's state convictions for armed robbery, home invasion, and possession of a firearm during the commission of a felony (felony firearm).

Petitioner was deprived of his right to present a defense and his right to effective assistance of trial counsel by the trial court's rulings that the late filing of a defense witness' report barred that witness from testifying and that another defense witness could not testify because he was late.  Therefore, the habeas petition is granted unless the state provides a new trial free from constitutional error within ninety days.

### I.  Background

### A.  Direct Review

On June 29, 1999, a circuit court jury in Wayne County, Michigan found Petitioner guilty of two counts of armed robbery, MICH. COMP. LAWS § 750.529, one count of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and one count of felony firearm, MICH. COMP.

*Ferensic v. Birkett*, No. 03-CV71435-DT

LAWS § 750.227b.  The trial court sentenced Petitioner to two years in prison for the felony

firearm conviction, twenty to sixty years for the armed robbery convictions, and ten to twenty

years for the home invasion conviction.  The sentences were ordered to run consecutively, except

for the two armed robbery convictions, which are running concurrently with each other.

On direct appeal Petitioner argued that (1) he was denied his right to present a defense by

The convictions and sentence arose from the armed robbery of Angie and Alexander

Kostoff at their home in Dearborn Heights on November 3, 1997.  As explained by the Michigan

Court of Appeals --

> The victims, an elderly, married couple, identified [Petitioner] as one of
> two perpetrators who broke into their house and robbed them of money and other
> valuables at gunpoint.  After describing [Petitioner] to the investigating officers,
> the victims met with a police sketch artist, who sketched composites of the
> perpetrators based on the victims' descriptions.  One of the officers in charge of
> the investigation recognized [Petitioner], a former police officer, and
> [Petitioner's] roommate from these sketches, and compiled a photographic array
> that included [Petitioner].  Only one of the victims was able to identify
> [Petitioner] from the photographic array.  However, both victims identified
> [Petitioner] from a live lineup and at [Petitioner's] preliminary examination.[1]  The
> victims' identification of [Petitioner], along with the officer's testimony that he
> recognized the two individuals based on the sketch artist's renderings, was the
> only evidence that [Petitioner] was involved in the offenses.

*People v. Ferensic*, No. 221806, 2001 WL 865089, at *1 (Mich. Ct. App. July 31, 2001)

(footnote in original).

Petitioner's defense was that he was at home sleeping on the day in question and that he

was mistakenly identified as the intruder.

On direct appeal Petitioner argued that (1) he was denied his right to present a defense by

---

[1]  Neither of the victims was able to identify [Petitioner's] roommate from a
photographic array or a live lineup as the second perpetrator.

2

*Ferensic v. Birkett*, No. 03-CV71435-DT

the exclusion of two defense witnesses and by the incompetence of trial counsel and (2) the

prosecutor deprived him of a fair trial by presenting false identification evidence and by pursuing

prejudicial evidence of motive.  Petitioner moved to remand his case for an evidentiary hearing,

but the Michigan Court of Appeals denied his motion.[2]  It later affirmed his convictions in an

unpublished *per curiam* opinion.  *See id*.

Petitioner raised the same two issues in the Michigan Supreme Court.  On April 29, 2003,

the supreme court denied leave to appeal.  *See People v. Ferensic*, 466 Mich. 855; 643 N.W.2d

575 (2002) (table).

## B.  The Initial Federal Habeas Corpus Petition

Petitioner filed his federal habeas corpus petition through counsel on April 10, 2003.  He

styled his arguments as follows:

> I.      Petitioner's constitutional rights to present a defense, to enjoy the
>         effective assistance of counsel and to a fair trial were impaired by
>         the arbitrary and capricious exclusion of two defense witnesses by
>         the trial judge, and the ineffective assistance of Petitioner's own
>         counsel.
>
> A.      The prosecution's case relied entirely on eyewitness
>         identification, an inherently unreliable form of
>         evidence.
>
> B.      The exclusion of defense witnesses was arbitrary
>         and violated Petitioner's rights under the United
>         States Constitution.
>
> C.      Alternatively, Petitioner's rights to present a
>         defense and enjoy a fair trial were violated by the
>         ineffectiveness of his own trial counsel whose

---

[2]  Judge Helene N. White voted to grant Petitioner's motion for a remand.

3

*Ferensic v. Birkett*, No. 03-CV71435-DT

>      inattention and omission caused the exclusion of the
>      two witnesses.  Counsel was separately ineffective
>      by failing to act to protect Petitioner from the unfair
>      prejudice of prosecutor's misconduct.
>
> D.   Petitioner should be entitled to an evidentiary
>      hearing to develop other record support to
>      demonstrate a conflict of interest resulting in a
>      violation of Petitioner's Sixth Amendment right to
>      counsel.
>
> II.  The prosecutor denied Petitioner a fair trial, by deception in
>      presenting identification evidence and by pursuing unfairly
>      prejudicial evidence of motive.

Respondent moved to dismiss the habeas petition on the ground that Petitioner did not

exhaust state remedies for his arguments that defense counsel (1) acted under a conflict of

interest and (2) should have objected to the prosecutor's conduct.  The Court agreed and

dismissed those claims so that Petitioner could present them first to the state court.  The Court

stayed the remaining claims.

### C.  State Collateral Review

Petitioner then raised his two unexhausted claims in a motion for relief from judgment.

The trial court denied the motion on the ground that Petitioner had not provided a reason for

failing to raise his claims on appeal.  Petitioner appealed the trial court's decision, but the

Michigan Court of Appeals denied leave to appeal for failure to  establish entitlement to relief

under Michigan Court Rule 6.508(D).  *See People v. Ferensic*, No. 252993 (Mich. Ct. App. Mar.

15, 2004).  On October 25, 2004, the Michigan Supreme Court denied leave to appeal for the

same reason.  *See People v. Ferensic*, 471 Mich. 896; 688 N.W.2d 83 (2004) (table).

4

*Ferensic v. Birkett*, No. 03-CV71435-DT

### D. Subsequent Proceedings in Federal Court

Petitioner returned to this Court with an amended habeas corpus petition, which contains all the claims that he raised in his first habeas petition.  On June 19, 2006, the Court held an evidentiary hearing.  Testifying at the hearing were:  Danny L. St. John; Dr. Harvey G. Shulman, an experimental psychologist; and David A. Goldenberg, who was Petitioner's trial attorney. The parties subsequently filed supplemental briefs.

### II. Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

5

*Ferensic v. Birkett*, No. 03-CV71435-DT

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." *Id*. at 411.

### III. Discussion

### A. The Trial Court's Exclusion of Two Defense Witnesses

Petitioner asserts that his constitutional right to defend himself was violated by the trial

court's arbitrary exclusion of two defense witnesses. Petitioner contends that the testimony of

the excluded witnesses would have implicated the reliability of the victims' testimony and

thereby challenged the core of the prosecution's case. The Michigan Court of Appeals

adjudicated this claim on the merits and concluded that the trial court did not abuse its discretion

when excluding the evidence.

"Few rights are more fundamental than that of an accused to present witnesses in his own

defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citing *Chambers v. Mississippi*, 410 U.S.

284, 302 (1973)). "[T]his right is an essential attribute of the adversary system itself" and "'a

fundamental element of due process of law.'" *Id*. at 408 and 409 (quoting *Washington v. Texas*,

388 U.S. 14, 19 (1967)). "Restrictions on a criminal defendant's right[] . . . to present evidence

'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan*

*v. Lucas*, 500 U.S. 145, 151 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). The

exclusion of evidence is "unconstitutionally arbitrary or disproportionate" when "it has infringed

6

*Ferensic v. Birkett*, No. 03-CV71435-DT

upon a weighty interest of the accused" or "undermined fundamental elements of the defendant's

defense."  *United States v. Scheffer*, 523 U.S. 303, 308, 315 (1998).

The Supreme Court's cases contain several illustrations of arbitrary rules that excluded

important defense evidence and did not serve any legitimate interests.  *See Holmes v. South*

*Carolina*, __ U.S. __, __, 126 S. Ct. 1727, 1731-32 (2006) (collecting cases).

> While the Constitution thus prohibits the exclusion of defense evidence under
> rules that serve no legitimate purpose or that are disproportionate to the ends that
> they are asserted to promote, well-established rules of evidence permit trial judges
> to exclude evidence if its probative value is outweighed by certain other factors
> such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Id*. at 1732.

Courts may preclude a defense witness from testifying as a sanction for failing to comply

with a pretrial discovery order, but a less drastic sanction is always available.  *Taylor v. Illinois*,

484 U.S. at 401-02 and 413.

> [I]f in deciding to exclude evidence under an evidentiary rule the court makes an
> objectively unreasonable determination as to Petitioner's ability to present [his or]
> her defense in the absence of this evidence, the decision to exclude the evidence
> under the rule is itself unreasonable.  *See Wiggins* [*v. Smith*], 539 U.S. 510, at __,
> 123 S. Ct. at 2538-2539 [(2003)] (holding that if the court makes an unreasonable
> determination as to the basis for counsel's strategy, the decision to defer to
> counsel's strategic choice is itself unreasonable).

*Rockwell v. Yukins*, 341 F.3d 507, 517 (6th Cir. 2003).

### 1.  The Defense Expert Witness

Petitioner wanted to present Harvey G. Shulman, Ph.D., as an expert witness on the

subject of eyewitness identification and its unreliability.  On December 18, 1998, the prosecutor

moved to exclude the testimony on the ground that identification was a question of fact for the

7

*Ferensic v. Birkett*, No. 03-CV71435-DT

jury.  The trial court stated that it would allow the expert witness to testify if defense counsel

gave the expert witness' report to the prosecutor at least two months before trial so that the

prosecutor could procure a rebuttal witness without delaying the trial.  Defense counsel agreed to

provide the report, and the trial court set a trial date of June 28, 1999.  (Tr. Dec. 18, 1998, at 3-

10.)

On June 17, 1999, defense counsel received Dr. Shulman's report and faxed it to the

prosecutor.  On the first day of trial, the prosecutor moved to exclude the defense expert witness

on the ground of the report being provided late.  The trial court granted the prosecutor's motion,

because defense counsel had not complied with the court's order to make Dr. Shulman's report

available to the prosecutor at least two months before trial.

Defense counsel later moved for reconsideration.  He reminded the court that he had

informed the jury in his opening statement to expect to hear from an expert defense witness and

another witness.[3]  The trial court denied  reconsideration on the ground that its ruling on

December 18, 1998, was intended to give the prosecutor an opportunity to prepare for trial

without an adjournment in the trial date.

### 2.  Danny St. John

The other witness that Petitioner wanted to present in his defense was Danny St. John.

Mr. St. John was not present in the courtroom after the prosecution rested its case. Defense

---

[3]  Defense counsel stated in his opening statement that the jury would hear from an
expert witness who would testify about the unreliability of eyewitness testimony.
Defense counsel also informed the jurors that they would be hearing from Danny St.
John, whose description of the suspect would not match Petitioner and whose description
of the suspects' vehicle would not match Mrs. Kostoff's description of the vehicle.

8

*Forensic v. Birkett*, No. 03-CV71435-DT

counsel explained to the trial court that Petitioner's father would be testifying next and that Danny St. John was expected to testify after him.  Defense counsel asked the trial court to adjourn the proceedings briefly after Mr. Forensic testified, because he had instructed Mr. St. John to be in court at 11:00 a.m.  The trial court refused to adjourn the trial on the ground that it was starting another trial at 11:00.

Mr. Forensic testified briefly, and the jury was excused at 10:25 a.m. for a coffee break. In the jury's absence, the trial court permitted defense counsel to make an offer of proof as to what Danny St. John would have said if he testified.  According to defense counsel, Mr. St. John would have testified that, on the day of the robbery, he was doing construction work two houses away from the Kostoffs' residence.  He noticed two white men drive past the Kostoffs' house in a black truck.  The truck turned around, traveled back in the direction from which it had come, and then parked in front of the Kostoffs' home.  The driver of the vehicle was about forty-five years old, and he had short, curly, black hair.  The court recessed for a break at 10:30 a.m.  The proceedings resumed with closing arguments at 10:57 a.m.

### 3.  The State Court Decision

The Michigan Court of Appeals characterized the exclusion of the expert witness as a "severe sanction."  The court nevertheless determined that the trial court did not abuse its discretion in excluding the defense expert witness, because the trial court's ruling "was nothing more than the court had warned of six months before trial."  *Forensic*, 2001 WL 865089, at *2. The court of appeals went on to say that

> the ruling did not put the prosecution in a better position than it would have
> enjoyed had the order been complied with because defense counsel was otherwise

9

*Ferensic v. Birkett*, No. 03-CV71435-DT

able to effectively challenge inconsistencies in the victims' identification
testimony.

*Id.*

As for the trial court's refusal to grant an adjournment to enable Danny St. John to
testify, the court of appeals stated that Petitioner had failed to show prejudice from the exclusion
of Mr. St. John's testimony. The court of appeals opined that, although Mr. St. John would have
testified to some differences in identification of the offenders and the vehicle they were driving,
"[t]he purported testimony was not especially strong, . . . and inconsistency inherent in the
victims' identification was otherwise shown." *Id.*

### 4. Analysis

It is true that defense counsel was able to challenge inconsistencies in the victims'
identification testimony. For example, defense counsel elicited testimony that the Kostoffs had
described Petitioner to the police as having curly black hair and as being armed with a black
handgun. Petitioner has light brown hair, and the Kostoffs maintained at trial that the handgun in
question was brown, gray, or gold, not black. Defense counsel also made the argument that
mistaken identifications happen, that unreliable eyewitness identification is common, and that
there are inherent problems with line-ups and show-ups. These arguments, however, were not an
effective substitute for the testimony of an expert witness, such as Dr. Harvey Shulman. Identity
was the primary issue. Dr. Shulman would have demonstrated how an eyewitness' memory and
recognition are not as reliable as one might initially believe. Without his testimony there was no
evidence to support counsel's argument.

Moreover, the prosecutor never said that he intended to present a witness to rebut the

10

*Ferensic v. Birkett*, No. 03-CV71435-DT

defense expert witness' testimony, and he did not claim to be prejudiced by the tardy disclosure of Dr. Shulman's report.  He must have been aware of Dr. Shulman's identity, because defense counsel submitted a list of his witnesses about ten months before trial.  The trial court, however, was not concerned with what the prosecutor had to say about hiring his own expert.

Mr. St. John also would have helped the defense, because his description of a suspect with curly black hair matched the description that the Kostoffs gave to the police.  At trial, the Kostoffs denied telling the police that Petitioner had curly black hair.   Therefore, Mr. St. John's testimony might have led the jurors to believe that the Kostoffs tailored their trial testimony to fit Petitioner's actual appearance.  In addition, Mr. St. John testified at the evidentiary hearing that he had never seen Petitioner before the hearing.

Petitioner did not testify.  This left Petitioner with only his father, David Ferensic, as a defense witness.  Mr. Ferensic testified that Petitioner had a noticeable facial scar,[4] that he owned a Cadillac,[5] and that he was unaware of Petitioner owning a cell phone[6] or using the flex ties that Mr. Ferensic had purchased.[7]  Mr. Ferensic admitted, however, on cross-examination by the prosecutor that he lived 130 to 140 miles away from Petitioner and that he did not know

---

[4]  The Kostoffs did not notice a scar on the armed robber whom they identified as Petitioner.

[5]  Mrs. Kostoff had testified that there was a black van or jeep parked in front of her home at the time of the armed robbery.

[6]  The man described as Petitioner received a call on his cell phone during the robbery.  He answered the call and said, "Shut up.  I'm inside."

[7]  The robbers tied up the Kostoffs with plastic flex ties, which they brought with them.

11

*Ferensic v. Birkett*, No. 03-CV71435-DT

whether his son had bought flex ties or borrowed a cell phone and a black vehicle on the day of the robbery. Mr. Ferensic's testimony was not particularly helpful to the defense.

The Court concludes that Petitioner was deprived of a substantial defense by the exclusion of Danny St. John and Dr. Harvey Shulman. The severe sanction of excluding Petitioner's witnesses was disproportionate to the trial court's need to manage its trial docket. The trial court could have imposed a less severe sanction. Its ruling on Petitioner's request to present witnesses undermined a fundamental element of Petitioner's defense.

The problem was exacerbated by the trial court's refusal to instruct the jury that the two defense witnesses in question were not permitted to testify. When defense counsel failed to present either witness as promised in his opening statement, the jury might have concluded that the witnesses were unable or unwilling to testify as expected and that defense counsel could not live up to the claims that he made in his opening statement. *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166-67 (3d Cir. 1993); *Harris v. Reed,* 894 F.2d 871, 879 (7th Cir. 1990).

Eyewitness testimony was the crucial basis for Petitioner's conviction, and expert testimony should be admitted when "there is no other inculpatory evidence presented against the Defendant with the exception of a small number of eyewitness identifications." *United States v. Smithers*, 212 F.3d 306, 317 (6th Cir. 2000). Although in this case a police officer recognized Petitioner and his roommate from an artist's sketches, the record indicates that the jurors were unable to agree on a verdict at one point during their deliberations.

Petitioner's Sixth Amendment right to an effective defense outweighed the interest served by the trial court's pretrial discovery ruling or the need to move the docket. Therefore,

12

*Ferensic v. Birkett*, No. 03-CV71435-DT

the state appellate court's decision was contrary to, or an unreasonable application of, clearly

established federal law as determined by the Supreme Court.

### B.  Ineffective Assistance of Counsel - Failure to Produce Defense Witnesses

Petitioner alleges next that his trial attorney was ineffective for not ensuring the

appearance of Dr. Harvey Shulman and Danny St. John as defense witnesses.  Dr. Shulman

would have provided expert testimony on the vagaries of eyewitness identifications and the

problems inherent in photographic displays and corporeal lineups. Danny St. John would have

provided a description that contradicted the descriptions provided by the Kostoffs at trial.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984),

"qualifies as 'clearly established Federal law'" for the purpose of evaluating ineffective-

assistance-of-counsel claims.  *Williams v. Taylor*, 529 U.S. at 391.  Pursuant to *Strickland*,

Petitioner must demonstrate that defense counsel's performance was deficient and that the

deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  "[T]he proper

standard for attorney performance is that of reasonably effective assistance."  *Id*.  Petitioner

"must show that counsel's representation fell below an objective standard of reasonableness."

*Id*. at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action 'might be considered sound trial strategy.'"  *Id*. at 689 (quoting *Michel v.*

*Louisiana*, 350 U.S. 91, 101 (1955)).

The prejudice prong of the Strickland test requires showing "a reasonable probability

13

*Ferensic v. Birkett*, No. 03-CV71435-DT

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The question is whether the evidence which was not revealed, "taken as a whole, might well have influenced the jury's appraisal of [Petitioner's] culpability" and whether "the likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in the outcome actually reached . . . ." *Rompilla v. Beard*, 543 U.S. 374, __, 125 S. Ct. 2456, 2469 (2005) (internal citations and quotation marks omitted).

### 1. Deficient Performance

The Michigan Court of Appeals concluded that defense counsel's failure to secure the testimony of Harvey Shulman and Danny St. John was "objectively unreasonable." This Court agrees for the following reasons that defense counsel's performance was deficient.

Danny St. John testified at the evidentiary hearing that he did not receive a subpoena to appear in court in 1997 and that no attorney asked him what he had said to the police. Petitioner's trial attorney, David Goldenberg, testified at the hearing that he could not recall whether he had spoken with Mr. St. John or whether he had issued a subpoena for his appearance.

Dr. Harvey Shulman also did not recall receiving a subpoena for Petitioner's trial, and Mr. Goldenberg did not recall issuing a subpoena for Dr. Shulman or receiving Dr. Schulman's report sixty days before trial. Mr. Goldenberg admitted that he did not hire another expert witness.

It is apparent from the record that defense counsel's failure to present Dr. Shulman and Danny St. John as witnesses was not a matter of trial strategy. He argued in favor of presenting

14

*Forensic v. Birkett*, No. 03-CV71435-DT

them, and he listed them as witnesses months before trial.

Counsel could have anticipated that the trial court would preclude him from presenting Dr. Shulman, because six months earlier, the court had conditioned the expert witness' testimony on submission of a timely report from him.  It was defense counsel's "responsibility to chase up the expert to ensure compliance with the [trial court's] order." *Forensic*, 2001 WL 865089, at *2.  At a minimum, defense counsel should have requested an extension of time to produce Dr. Shulman's report, because "the lawyer has - and must have - full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. at 418.

As previously explained, the only defense witness was Petitioner's father, who was unable to add much support to the defense of mistaken identity.  Therefore, the failure to produce Danny St. John and Dr. Shulman was deficient performance.

## 2. Prejudice

The remaining question is whether defense counsel's deficient performance prejudiced the defense.  In deciding this question, the Court notes that no physical evidence linked Petitioner to the crimes.  There were no usable fingerprints, and none of the stolen items or the cellular telephone used during the robbery were found in Petitioner's home.  The vehicle used by the robbers also was not linked to Petitioner.  The Kostoffs' identification of Petitioner, "along with the officer's testimony that he recognized the two individuals based on the sketch artist's renderings, was the only evidence that [Petitioner] was involved in the offense." *Forensic*, 2001 WL 865089, at *1.

The state court determined that Petitioner had failed to show prejudice as a result of the

15

*Ferensic v. Birkett*, No. 03-CV71435-DT

deficient performance, because

> [t]he victims' identification of [Petitioner] was effectively attacked through other means, and standing alone, the testimony of the officer who recognized defendant from the sketch artist's rendering would arguably have been sufficient to convict.

*Id.* at *2.

The state court used the wrong standard by focusing on the sufficiency of the evidence. The prejudice inquiry "*is not the same as the sufficiency of the evidence analysis.*"  *Richey v. Mitchell*, 395 F.3d 660, 687 (6th Cir.) (emphasis added), *overruled on other grounds sub nom Bradshaw v. Richey*, __ U.S. __, 126 S. Ct. 602 (2005).  It also is not the same as

> the analysis that a court might perform when deciding a motion for summary judgment.  As the Fifth Circuit has explained, [the Court] need *not* find "that a reasonable jury could not have reached the same verdict if counsel had performed effectively."  *Johnson v. Scott*, 68 F.3d 106, 109 n.4 (5th Cir. 1995).  [Petitioner] "need not show that he could not have been convicted.  Instead, he need only undermine [the Court's] confidence in the trial's outcome."  *Foster* [*v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993)].

*Id.* (emphasis in original).  With this standard in mind, the Court considers what Danny St. John and Dr. Harvey Shulman might have said if they had testified at trial.

Danny St. John testified at the evidentiary hearing that he did not know Petitioner and never saw him before.  Similar testimony at trial might have caused the jurors to question the Kostoffs' testimony even though Mr. St. John could describe only one of the two men he saw.  In addition, his description of one of the robbers having black curly hair was consistent with the original description given by Mr. and Mrs. Kostoff, which they denied at trial.

An expert witness's testimony on the unreliability of identification testimony also might have led the jurors to question the Kostoffs' identification testimony.  "The vagaries of

16

*Ferensic v. Birkett*, No. 03-CV71435-DT

eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identifications." *United States v. Wade*, 388 U.S. 218, 228 (1967).  An expert witness on eyewitness testimony, such as Dr. Harvey Shulman, would have helped the jury to understand that "there are serious limitations on the reliability of eyewitness identification of defendants . . . ." *People v. Anderson*, 389 Mich. 155, 173; 205 N.W.2d 461, 469 (1973), *overruled on other grounds by People v. Hickman*, 470 Mich. 602; 684 N.W.2d 267 (2004).  "Expert testimony has been proven to improve juror knowledge, sensitize jurors to witnessing and identification factors, and desensitize them toward witness confidence."  Brooke Whisonant Patterson, *The 'Tyranny of the Eyewitness,'* 28 Law & Psychol. Rev. 195, 202 n.77 (Spring 2004).

Dr. Shulman testified at the evidentiary hearing that several factors, such as divided attention, stress, passage of time, photo arrays, collaboration of witnesses, and social conformity, affect memory.  He noted that crime produces stress, which makes high resolution (detailed) memory of faces difficult.  He opined that the guns carried by the robbers in this case were the most distracting factor, because a person's attention is directed to a weapon.  "Sticky attention" to a weapon reduces the ability to recall details and leads to inaccurate identification, according to Dr. Shulman.  In addition, gaps in memory are filled in by world knowledge, post-event information, inferences, and talking to other witnesses.  Eyewitnesses find it difficult to disregard these influences on  memory.  Dr. Shulman also stated that there is no statistical relationship between a witness's level of confidence in his or her identification and the accuracy of memory.

Much of Dr. Shulman's testimony is borne out by the literature on eyewitness testimony.

17

*Forensic v. Birkett*, No. 03-CV71435-DT

*See, e.g.,* Henry F. Fradella, *Why Judges Should Admit Expert Testimony on the Unreliability of Eyewitness Testimony*, 2006 Fed. Cts. L. Rev. 3, at 1-46 (June 2006).  Of course, not all of Dr. Shulman's theories about memory and identification are applicable to this case, and the jury might have convicted Petitioner even if Danny St. John and Dr. Shulman had testified.  However, their testimony would have provided a different perspective on the eyewitnesses' identification of Petitioner.  Dr. Shulman's testimony also would have provided a defense to the prosecutor's arguments about the value of the eyewitnesses' successive identifications of Petitioner.  The likelihood that a different result would have occurred if Danny St. John and Dr. Shulman had testified at trial is sufficient to undermine confidence in the outcome of the trial.  Therefore, the state appellate court's conclusion that defense counsel's deficient performance was not prejudicial amounted to an unreasonable application of *Strickland*.

### C.  Ineffective Assistance of Counsel - Conflict of Interest

Petitioner contends that his trial attorney, David A. Goldenberg, advanced his own interests instead of Petitioner's interests by misappropriating funds that were allocated  for a private investigation and an expert witness.  Petitioner alleges that he was entitled to have an attorney who was not operating under a conflict of interest.

Respondent argues that this claim is procedurally defaulted, because Petitioner did not raise it on direct appeal and, when he raised it in post-conviction proceedings, the state courts declined to review the claim on the basis of Michigan Court Rule 6.508(D).  "Procedural default is not a jurisdictional bar to review on the merits," *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1032 (2006), and the Court believes it is easier to

*Ferensic v. Birkett*, No. 03-CV71435-DT

address the merits of Petitioner's claim than to perform a procedural default analysis. Consequently, the Court will excuse the alleged procedural default and go directly to the merits of Petitioner's underlying claim.  Review is *de novo* because no state court addressed the claim on the merits.  *Id.* at 467.

"[C]ourts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client."  *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998).  Petitioner must show not just the possibility of a financial conflict, but that his attorney actively represented his own financial interest. *Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001).

Mr. Goldenberg testified at the evidentiary hearing that he represented Petitioner in more than one criminal case.  He claimed that he used the funds set aside for the expert in Petitioner's armed robbery case for fees in other cases.  He thought that the money was applied to a federal criminal case, which became more complicated than originally anticipated.  He also thought that Petitioner's parents, who retained him to represent Petitioner, approved the use of the money for the federal case.  He stated that the Ferensics' complaint to the Attorney Grievance Commission about him was determined to lack merit.  Petitioner has failed to show that Mr. Goldenberg abdicated his professional responsibility to Petitioner and actively represented his own financial interests.

### D.  The Prosecutor's Conduct

Petitioner's final claim concerns the prosecutor and defense counsel's failure to object to the prosecutor's conduct.  Respondent argues that Petitioner's prosecutorial-misconduct claim is

19

*Forensic v. Birkett*, No. 03-CV71435-DT

barred by Petitioner's procedural default of failing to make a contemporaneous objection at trial. The Court will excuse the alleged procedural default because it is easier to address the merits of Petitioner's prosecutorial-misconduct claim than to perform a procedural default analysis. *See Howard v. Bouchard*, 405 F.3d at 476. Review is *de novo* because no state court adjudicated the merits of the claim. *Id*. at 467.

To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct and remarks, taken in the context of the entire trial, were sufficiently prejudicial and infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 643 (1974). It is not enough to show that the prosecutor's conduct was improper or even universally condemned. *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003), *cert. denied sub nom Bowling v. Haeberlin*, 543 U.S. 842 (2004). The Court may grant relief only if the conduct was "so flagrant as to render the entire trial fundamentally unfair." *Id*.

When reviewing claims of prosecutorial misconduct, the first question is whether the prosecutor's statements were improper. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). If the remarks were improper, the Court must consider whether the impropriety was so flagrant as to violate the defendant's right to due process. *Id*.

### 1.  Comments about the Other Robber

Petitioner alleges that the prosecutor bolstered his case by giving the false impression that the Kostoffs identified Petitioner's former roommate, Neal Swasey, as the other robber. Neither Mr. Kostoff, nor Mrs. Kostoff, was able to identify the other robber in photographs or at

20

*Forensic v. Birkett*, No. 03-CV71435-DT

a lineup.  The transcript of trial, however, suggests that the prosecutor compared a photographs

of Mr. Swasey to the artist's sketch of Petitioner's alleged accomplice.  The prosecutor then said

that it was not coincidental that the sketch looked very much like Petitioner's roommate.

The prosecutor also elicited testimony from Lieutenant Gary Tomkiewicz that Lt.

Tomkiewicz saw the composite of the second man and recognized the man as Petitioner's former

roommate.  And in his rebuttal argument, the prosecutor stated that there was no reasonable

doubt about the prosecution's case, in part, because of the photographs of Petitioner's roommate.

Prosecutors may not misrepresent facts in evidence, *Washington v. Hofbauer*, 228 F.3d

689, 700 (6th Cir. 2000), nor "bring to the attention of the jury any 'purported facts that are not

in evidence and are prejudicial.'"  *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000) (quoting

*United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)).  However, the Michigan Court of

Appeals correctly recognized that, "[t]he challenged prosecutorial references . . . were grounded

in the evidence presented and represent appropriate inferences drawn from that evidence."

*Forensic*, 2001 WL 865089, at *3.

The prosecutor was entitled to make reasonable inferences from the record.  *United*

*States v. Collins,* 28 F.3d 1021, 1040 (6th Cir. 1996).  Therefore, the prosecutor's conduct was

not fundamentally unfair.  The state court's conclusion that Petitioner's claims of prosecutorial

misconduct lacked merit did not result in a decision that was contrary to, or an unreasonable

application of, Supreme Court precedent.

## 2.  Evidence of Marijuana and Drug Paraphernalia

Petitioner alleges that prosecutor impaired his right to due process by eliciting testimony

21

*Forensic v. Birkett*, No. 03-CV71435-DT

about the seizure of marijuana and related items from Petitioner's home during the execution of a search warrant.  The prosecutor also stated in his closing argument that marijuana may have been the motive for the crime.

There is no Supreme Court decision holding that a state violates due process by admitting evidence of other bad acts.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Therefore, the prosecutor's conduct was not improper, and the state appellate court's conclusion that no error occurred was not "contrary to" Supreme Court precedent. *Id.* at 513.

### 3.  Trial Counsel's Failure to Object

Petitioner asserts that his trial attorney should have objected to the prosecutor's insinuations, comments, and conduct.  However, because there is no merit in Petitioner's underlying claims about the prosecutor, defense counsel was not ineffective for failing to object to the alleged misconduct.  A defense attorney is not ineffective for failing to make a meritless objection.  *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1142 (2006), and *cert. denied*, __ U.S. __, 126 S. Ct. 1145 (2006).

### IV.  Conclusion

Petitioner has demonstrated that the trial court's exclusion of defense witnesses deprived him of a fair trial and his right to present a defense.  Petitioner also has demonstrated that defense counsel's failure to produce two witnesses deprived him of effective assistance of counsel.  The state court's conclusion to the contrary was contrary to, or an unreasonable application of, Supreme Court precedent.  Petitioner's claims about defense counsel's alleged conflict of interest, about the prosecutor's alleged misconduct, and about defense counsel's

22

*Ferensic v. Birkett*, No. 03-CV71435-DT

failure to object to the prosecutor's conduct lack merit.

The writ of habeas corpus, therefore, is conditionally granted on the claims that Petitioner was deprived of his constitutional rights to present a defense and to effective assistance of trial counsel.  The State is **ORDERED** to release Petitioner unless it retries him within ninety days of the date of this order.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  August 25, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 25, 2006, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary

23